# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| LUCIA NOLASCO, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-12-1875 |
| | § | |
| CITIMORTGAGE, INC., *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION & ORDER

Pending before the court is defendants CitiMortgage, Inc. ("CMI") and the Federal Home

Loan Mortgage Corporation's ("Freddie Mac") (collectively "defendants") motion to dismiss

plaintiff's first amended complaint. Dkt. 2. After considering the motion, response, reply, and

applicable law, and for the reasons set forth below, the motion to dismiss is GRANTED.

## I. BACKGROUND

In 2002, Lucia Nolasco ("Nolasco") purchased a home located at 5316 Hemlock Street,

Baytown, Texas 77521 and financed the purchase through a mortgage loan (the "note"). Dkt. 2, Ex.

B at 2. To secure her obligations under the note, Nolasco signed a deed of trust that irrevocably

granted and conveyed title to the trustee, with power of sale. Dkt. 2, Ex. A at 4. The note was

transferred to Freddie Mac and eventually defendant Ameriventure, Ltd. ("Ameriventure"),[1] with

CMI acting as the loan servicer. Dkt. 1, Ex. B at 64.

In 2011, Nolasco was laid off and defaulted on the note following her inability to make

scheduled payments. *Id*. at 65. Nolasco alleges that CMI provided her with an amount to pay to

---

[1] Nolasco's live complaint named four defendants, CMI, Freddie Mac, Jack O'Boyle & Associates, and Ameriventure. Dkt. 1, Ex. B.  On July 3, 2012, she voluntarily dismissed Jack O'Boyle & Associates (Dkt. 3), and no return of service is on file for Ameriventure.

reinstate her loan, but was told the payment amount had changed when she attempted to pay several days later.  *Id*.  Several days after that encounter, she alleges CMI refused to accept payment of the new, higher amount.  *Id*.  On October 29, 2011, Nolasco submitted her application for a loan modification under the Home Affordable Modification Program ("HAMP").  *Id*.  HAMP is a program established by the U.S. Department of the Treasury, the Federal Housing Finance Agency, the Federal National Mortgage Association ("Fannie Mae"), and Freddie Mac, pursuant to the authority provided in the Emergency Economic Stabilization Act of 2008.  12 U.S.C. §§ 5201 *et seq*.  Nolasco alleges that when she contacted CMI to check on the status of her loan modification, she was informed that her home was posted for foreclosure sale on November 1, 2011.  Dkt. 1, Ex. B at 65.  She alleges that a CMI employee told her the company would stay the foreclosure sale until a final decision regarding her loan modification was reached, but despite that, her home was sold through a non-judicial foreclosure sale on November 1, 2011.  *Id*.

On February 15, 2012, Ameriventure received a judgment for possession in Justice Court for the Third Precinct, Harris County, Texas, and was awarded possession on May 8, 2012.  *Id*. at 71.  In the meantime, on April 24, 2012, Nolasco filed her original complaint in this case in the 189th Judicial District Court of Harris County, Texas, cause number 2012-23430.  *Id*. at 5.  Nolasco received an eviction notice from Harris County Constable Ken Jones on June 12, 2012.  *Id*. at 106.  On the same day, she filed her first amended complaint and applications for temporary restraining order and temporary injunction with the state court, alleging the following five causes of action: (1) breach of contract; (2) violation of the Texas Debt Collection Act ("TDCA"); (3) suit to quiet title; (4) a contractual right to defend against acceleration and sale; and (5) declaratory judgment.[2]

---

[2] Nolasco did not attach the note or deed of trust to either her original or first amended complaint.  While the court may not look beyond Nolasco's complaint when considering a Rule 12(b)(6) motion, it may consider documents attached to a motion to dismiss if the documents are referred to in the complaint and are central to her claims.  *See Scanlan v. Tex.*

Dkt. 1, Ex. B at 71–78.  Nolasco's application for temporary restraining order was granted, after posting $250 bond, on June 13, 2012, with an expiration date fourteen days later.  *Id.* at 109–10.

On June 22, 2012, CMI and Freddie Mac removed the case to this court (Dkt. 1) and filed the instant motion to dismiss (Dkt. 2) on June 29, 2012.  Nolasco filed a response in opposition (Dkt. 6) on July 23, and defendants filed a reply (Dkt. 8) on July 30.  The motion is ripe for adjudication.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Factual allegations must . . . raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.  While the allegations need not be overly detailed, a plaintiff's pleadings must still provide the grounds of his entitlement to relief, which "requires more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("naked assertions devoid of further factual enhancement," along with "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth).  "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

Moreover, demonstrating the facial plausibility of a claim requires a plaintiff to establish "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  It is

---

*A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).  The court properly considers these instruments because they are attached to defendants' motion to dismiss, they are referred to in Nolasco's first amended complaint, and they are central to her claims.

not enough that a plaintiff allege the mere possibility of misconduct; it is incumbent to "show[] that the [plaintiff] is entitled to relief." FED. R. CIV. P. 8(a)(2); *see also Iqbal*, 556 U.S. at 679.  The court may dismiss a complaint under Rule 12(b)(6) if either the complaint fails to assert a cognizable legal theory or the facts asserted are insufficient to support relief under a cognizable legal theory. *Stewart Glass & Mirror, Inc. v. U.S.A. Glas, Inc.*, 940 F. Supp. 1026, 1030 (E.D. Tex. 1996).

### III.  ANALYSIS

Nolasco's first amended complaint alleges the following five causes of action: (1) breach of contract; (2) violation of the Texas Debt Collection Act; (3) suit to quiet title; (4) contractual right to defend against acceleration and sale; and (5) declaratory judgment.  Dkt. 1, Ex. B at 71–78. Defendants move to dismiss Nolasco's claims, arguing that Nolasco has failed to plead facts which, if true, would establish any of these causes of action against them.  Dkt. 2 at 5–14.

**A. Breach of Contract Claim and Defenses to Acceleration**

Defendants move for dismissal of Nolasco's breach of contract claim on the following grounds: (1) her claim relies solely on CMI's compliance with HAMP, the Home Affordable Foreclosure Alternatives Program ("HAFA"),[3] and the Freddie Mac Single-Family Seller/Servicer Guide (the "Guide") (collectively, the "Guidelines"); (2) she does not have a private cause of action under HAMP or HAFA; (3) she lacks standing to enforce the Guide because she is not a party to, nor a third-party beneficiary of, the servicing agreement; (4) the note and deed of trust do not incorporate the Guide into the parties' agreement; and (5) she defaulted and cannot sustain a contract claim after materially breaching the loan.

---

[3] HAFA is a sub-program of HAMP that offers the options of a short sale or a deed-in-lieu of foreclosure to homeowners who can no longer afford their mortgage payments. *Burr v. JPMorgan Chase Bank, N.A.*, No. 4:11-cv-03519, 2012 WL 1059043, at *3 n.4 (S.D. Tex. Mar. 28, 2012).

Nolasco argues that dismissal is not proper because (1) her claim arises under Texas contract law and alleges that defendants breached provisions in the deed of trust that obligated them to provide adequate time to cure the default, and (2) the deed of trust expressly provides that she has a right to bring a court action to assert a defense to the acceleration of the note and sale of her home. The court will address the breach and defensive claims in turn.

### 1. *Breach of the Deed of Trust*

The deed of trust provides that it "shall be governed by federal law and the law of the jurisdiction in which the Property is located." Dkt. 2, Ex. A at 8. A plaintiff asserting a breach of contract under Texas law must allege (1) the existence of a valid contract, (2) the plaintiff performed or tendered performance, (3) the defendant breached the contract, and (4) the plaintiff was damaged as a result of the breach. *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Paragraph 22 of the deed of trust provides, in relevant part, the following covenant regarding notice of acceleration:

> The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property.

Dkt. 2, Ex. A at 10. This paragraph conforms with Texas common law, requiring notice of intent to accelerate, the action required to cure, a date by which to cure, and that failure to do so will result in acceleration and sale. *See Stanley v. CitiFinancial Mortg. Co.*, 121 S.W.3d 811, 818 (Tex. App.—Beaumont 2003, pet. denied).

Nolasco's first amended complaint alleges that, upon default, CMI was "required by the security instrument to send Ms. Nolasco notice of the default listing the specific actions she *could take* to cure the default." Dkt. 1, Ex. B at 71 (emphasis added). She argues that defendants did not

5

allow her adequate time to pursue "*possible* default curing options."  Dkt. 6 at 4 (emphasis added).

She further alleges that the Guidelines required CMI to stay any foreclosure activity while it

considered her application for HAMP modification.  Dkt. 1, Ex. B at 71.  Nolasco further alleges that

CMI breached the deed of trust because it "foreclosed on [her] during the time [it was] supposedly

evaluating her for a HAMP modification which is both a breach of the security instrument as well

as a breach of the Freddie Mac's [sic] Servicing Guidelines."  *Id*. at 72.

Nolasco's argument fails on two grounds.  First, Nolasco acknowledges that HAMP does not

grant a private right of action and that she cannot base a breach of contract claim on a HAMP

violation.  Dkt. 6 at 3–4.  But she then proceeds to argue that her breach of contract claim arises

under the deed of trust because CMI failed to properly consider her for various default-curing

options, namely a loan modification under HAMP.[4]  To the extent that Nolasco's allegation contends

that defendants had an obligation to offer her a HAMP loan modification, that allegation must be

grounded in an assertion that she is a third-party beneficiary of the servicing agreement between

defendants.

In analyzing the viability of Nolasco's status as a third-party beneficiary, the court looks to

the Texas common law of contracts.[5]  Here, Nolasco has not met her burden to present facts

_____

[4] While the court must presume the truth of Nolasco's alleged facts when determining a Rule 12(b)(6) motion, her assertion regarding the nature of her cause of action is a legal conclusion that the court need not adopt.  *See Blackburn*, 42 F.3d at 931.

[5] In a similar case, this court collected and stated Texas law regarding third-party beneficiaries:

> Under Texas law, establishing a third-party beneficiary claim is a difficult burden; there is a presumption against the finding and enforcement of third-party beneficiary agreements.  *MJR Corp. v. B&B Vending Co.*, 760 S.W.2d 4, 12 (Tex. App.—Dallas 1988, writ denied).  The contracting parties' intent is controlling in determining whether a party is a third-party beneficiary of a contract.  *Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501, 503 (Tex. 1975); *see also Sowell v. Nw. Cent. Pipeline Corp.*, 703 F. Supp. 575, 581 (N.D. Tex. 1988).  In determining intent, Texas courts presume that parties contract only for themselves and not for the benefit of third parties, unless the obligation to the third party is clearly and fully spelled out.  *Talman Home Fed. Sav. & Loan Ass'n of Ill. v. Am. Bankers Ins.*, 924 F.2d 1347, 1351 (5th Cir. 1991); *Corpus Christi Bank & Trust*, 525 S.W.2d at

evidencing legislative intent to provide borrowers with a cause of action for breach of contract under HAMP. As courts in this district have held, borrowers do not have standing to challenge compliance with the Guidelines, and in evaluating Nolasco's allegation that CMI violated its servicing agreement with the government, the court "cannot bypass Congressional authority to strengthen enforcement measures . . . by manufacturing a private right of enforcement that does not presently exist." *Cade v. BAC Home Loans Servicing, LP*, No. H-10-4224, 2011 WL 2470733, at *3 n.4 (S.D. Tex. June 20, 2011); *see also Burr v. JPMorgan Chase Bank, N.A.*, No. 4:11-cv-03519, 2012 WL 1059043, at **4–5 (S.D. Tex. Mar. 28, 2012). Other district courts are in accord. *See, e.g., Bohnhoff v. Wells Fargo Bank, N.A.*, No. 11-3408(DSD/JSM), 2012 WL 1110585, at *1 (D. Minn. Apr. 3, 2012) (no private right of action); *Marks v. Bank of Am., N.A.*, No. 03:10-cv-08039-PHX-JAT, 2010 WL 2572988, at **2–3 (D. Ariz. June 22, 2010). Asserting rights as a third party amounts to asserting a private right of enforcement on a contract; absent clear contractual intent to confer third-party beneficiary rights, Nolasco does not have standing to bring an action for breach of contract under HAMP or Texas law.

Next, and more directly addressing the claim Nolasco makes in her response, the deed of trust and Texas law do not require defendants provide her with a list of cure options—they obligate them to give her notice of *the action* required to cure. *See Stanley*, 121 S.W.3d at 818; Dkt. 2, Ex. A at 10. There is nothing in the deed of trust or note granting Nolasco, following her default, the right to *any* loan modification, let alone HAMP consideration, nor does she allege that her notice specified

---

503–04; *MJR Corp.*, 760 S.W.2d at 10. A party claiming third-party beneficiary status will succeed or fail according to the contract terms, "as disclosed within the four corners of the instrument." *Greenville Indep. Sch. Dist. v. B&J Excavating, Inc.*, 694 S.W.2d 410, 412 (Tex. App.—Dallas 1985, writ ref'd n.r.e.).

*Burr*, 2012 WL 1059043, at *4.

that loan modification was "the action required to cure the default." Indeed, she does not assert that the form of notice was improper and instead argues that the court should read into the contract additional terms that are simply not present.

In addition to the absence of such language, paragraph 12 of the deed of trust supports the contrary view, where it explicitly provides that the "[e]xtension of the time for payment or modification of amortization of the sums . . . shall not operate to release the liability of [Nolasco,]" and that any forbearance in exercising defendants' rights or remedies "shall not be a waiver of or preclude the exercise of any right or remedy." Dkt. 2, Ex. A at 8. Nolasco's breach of contract cause of action, alleged in paragraphs 25–29 of her amended complaint, does not make a claim that CMI failed to provide notice of the action required to cure her default, nor the date by which such action was to be performed, prior to acceleration of the note and sale. Nolasco's breach of contract claim should be DISMISSED.

### 2. *Defenses to Acceleration and Sale*

Nolasco's amended complaint alleges two defenses, waiver and quasi-estoppel, to the acceleration of the note and foreclosure sale of her home.[6] Dkt. 1, Ex. B at 74. Nolasco grounds these defenses in paragraph 22 of the deed of trust, which grants her the "right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." *Id*.; Dkt. 6 at 5.

---

[6] Nolasco's response notes that defendants do not request that the court dismiss her claims in defense of acceleration and sale. Dkt. 6 at 4–5. Nevertheless, the court reviews them *sua sponte*, which is allowed "if the plaintiff has notice of the possibility of a ruling on the merits or if the plaintiff has had the opportunity to allege its 'best case.'" *Broyles v. Texas,* 618 F. Supp. 2d 661, 683 (S.D. Tex. 2009), *aff'd,* 381 F. App'x 370 (5th Cir. 2010) (citing *Lozano v. Ocwen Fed. Bank,* 489 F.3d 636, 642 (5th Cir. 2007)). Here, although defendants' argument was not in the proper form, the similarity of their argument against the breach of contract and TDCA claims and the existence of a "no waiver" clause in the deed of trust makes the argument, in substance, an attack on Nolasco's defensive claims. She also alleged her best case—her response supported her defensive claims with the deed of trust provision at issue and counterarguments. Accordingly, plaintiff will suffer no prejudice if the court reviews these claims in its analysis of the motion to dismiss.

Nolasco argues that CMI relinquished its right to accelerate the note and sell the property by offering alternatives to foreclosure.  Dkt. 1, Ex. B at 74.  Under Texas law, "[w]aiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). Importantly, however, the deed of trust explicitly states that the "[e]xtension of time for payment or modification of amortization . . . shall not operate to release the liability of Borrower[,]" and further that "[a]ny forbearance by Lender in exercising any right or remedy . . . shall not be a waiver of or preclude the exercise of any right or remedy."  Dkt. 2, Ex. A at 8.  Nolasco had no contractual right to prevent foreclosure, aside from "the action" CMI required to cure the default, unless and until she and CMI agreed to modify the terms of the deed of trust or note.  *See* Dkt. 2 at 8–9; *Bryant v. Bank of Am., N.A.*, No. 4:11-cv-448, 2012 WL 2681361, at *9 (E.D. Tex. June 6, 2012).  Therefore, CMI's alleged forbearance from immediate foreclosure did not operate as a waiver of its rights or remedies stemming from Nolasco's breach.  Accordingly, Nolasco's waiver defense is DISMISSED.

Next, in the alternative, Nolasco argues that the doctrine of quasi-estoppel should be applied to prevent the acceleration and sale.  Dkt. 1, Ex. B at 75.  Texas law permits the application of quasi-estoppel when "it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit."  *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000).  "Thus, quasi-estoppel forbids a party from accepting the benefits of a transaction and then subsequently taking an inconsistent position to avoid corresponding obligations or effects." *Lindley v. McKnight*, 349 S.W.3d 113, 131 (Tex. App.—Fort Worth 2011, no pet.).  Nolasco asserts that CMI failed to follow the Guidelines and consider her requests for foreclosure alternatives.  Dkt. 1, Ex. B at 75.  This failure, she argues, is inconsistent with CMI's offer to consider her for HAMP program eligibility, and is contrary to defendants'

9

correspondence with her prior to foreclosure. *Id.* at 75–76.  Nolasco further asserts that CMI benefits from its agreement with Freddie Mac, satisfying the conditions necessary for her quasi-estoppel defense. *Id.*

However, Nolasco was owed no right to loan modification, and the deed of trust expressly indicated that any such offer would not preclude liability for her breach, nor function as a waiver to foreclosure through a power of sale. *See* Dkt. 2 at 8–9.  Furthermore, because Nolasco misplaces CMI's alleged benefits from the transaction as between CMI and Freddie Mac—the quasi-estoppel defense forbids the acceptance of benefits inconsistent with obligations in the same transaction between the same parties—Nolasco cannot assert rights under CMI's agreement with Freddie Mac. Accordingly, Nolasco's alternative quasi-estoppel defense is DISMISSED.

## B. Violations of the Texas Debt Collection Act

Nolasco asserts violations of sections 392.301(a)(8), 392.304(a)(8), and 392.304(a)(19) of the Texas Finance Code.  Dkt. 1, Ex. B at 72–74.  The court addresses these claims in turn.

### 1. Section 392.301(a)(8)

When collecting a debt, a debt collector "may not use threats, coercion, or attempts to coerce [by employing the practice of] threatening to take an action prohibited by law."  TEX. FIN. CODE § 392.301(a)(8).  Nolasco argues that CMI threatened to foreclose on the note without properly complying with the requirements of paragraph 22 of the deed of trust.  Dkt. 1, Ex. B at 73.  She alleges that failure to properly consider her for loan modification breached the deed of trust, and that breach violated the TDCA by "threatening to take an action prohibited by law."  *Id.*  But the TDCA does not prevent a debt collector from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings."  TEX. FIN. CODE § 392.301(b)(3); *Sweet v. Wachovia Bank & Trust Co.*, No. Civ. A. 3:03-cv-1212-R, 2004 WL

1238180, at *3 (N.D. Tex. Feb. 26, 2004). As discussed above, defendants owed Nolasco notice of *the action* required to cure the default. Since she does not allege facts sufficient to sustain her breach of contract action, and because "[f]oreclosure is not an action prohibited by law[,]" this claim should be DISMISSED. *See Burr*, 2012 WL 1059043, at *7; *Watson v. CitiMortgage, Inc.*, No. 4:10-cv-707, 2012 WL 381205, at *8 (E.D. Tex. Feb. 3, 2012).

### 2. *Sections 392.304(a)(8) and (a)(19)*

Next, Nolasco argues that defendants violated sections 392.304(a)(8) and (a)(19) by failing to account for the total amounts due and the payments that were made on any reinstatement or payoff quote. Dkt. 1, Ex. B at 73–74. These sections prevent a debt collector from misrepresenting the character, extent, or amount of a debt, or the use of any other false representations or deceptive means to collect a debt. TEX. FIN. CODE §§ 392.304(a)(8), (a)(19). However, "[f]or a statement to constitute a misrepresentation under the TDCA, the debt collector must have made an affirmative statement that was false or misleading." *Burr*, 2012 WL 1059043, at *7 (quoting *Bellaish v. Chase Home Fin., LLC*, No. H-10-2791, 2011 WL 4902958, at *2 (S.D. Tex. Oct. 14, 2011)). Nolasco does not allege that defendants made an affirmative misrepresentation; she claims instead that CMI "affirmatively refused to provide an accurate payoff quote." Dkt. 6 at 6. Refusing to provide a payoff quote is not an affirmative misrepresentation of *the amount of debt*. *See Burr*, 2012 WL 1059043, at *7. Further, Texas law does not recognize an implied obligation to provide a payoff amount except in certain limited circumstances, none of which is applicable here. *See Graves v. Logan*, No. 10-08-00359-CV, 2010 WL 1241821, at *3 (Tex. App.—Houston [1st Dist.] Mar. 29, 2010, no pet.) (holding that the debtor's implied duty to cooperate with respect to the promissory note secured by the deed of trust did not include an implied duty by the creditor to provide the debtor with a payoff figure upon the debtor's request). Finally, Nolasco's complaint attributes the violation

of section 392.304(a)(19) to the actions of Jack O'Boyle & Associates, which has been dismissed from this case.  Dkts. 3, 10.  Thus, Nolasco's claims for violations of sections 392.304(a)(8) and (a)(19) of the Texas Finance Code are DISMISSED.

## C.  Quiet Title & Declaratory Relief Claims

### 1.  *Quiet Title*

A suit to quiet title is an equitable remedy to clarify ownership by removing clouds on the title.  *See Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007).  To establish a quiet title claim, Nolasco must show the following: (1) an interest in specific property; (2) that title to the property is affected by defendants' claim; and (3) that the claim, although facially valid, is invalid or unenforceable.  *Sadler v. Duvall*, 815 S.W.2d 285, 293 n.2 (Tex. App.—Texarkana 1991, writ denied).  Nolasco must prove, as a matter of law, that she has a right of ownership and that the adverse claim is a cloud on the title that equity will remove.  *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Nolasco has failed to allege facts evidencing her superiority of title.  There is no dispute that the foreclosure sale was conducted on November 1, 2011.  The court has determined that Nolasco has not asserted facts sufficient to establish a breach of contract claim for which relief can be granted.  She thus cannot establish ownership or a cloud on the title.  Accordingly, Nolasco's quiet title claim is DISMISSED.

### 2.  *Declaratory Relief*

The federal Declaratory Judgment Act states, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether

or not further relief is or could be sought." 28 U.S.C. § 2201.[7]  Federal courts have broad discretion

to grant or refuse declaratory relief.  *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir.1991).

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts

unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton v.*

*Seven Falls Co.*, 515 U.S. 277, 286 (1995).  The Declaratory Judgment Act gives federal courts the

competence to declare rights, but it does not impose a duty to do so.  *Public Affairs Assocs., Inc. v.*

*Rickover*, 369 U.S. 111, 112 (1962).

    The Declaratory Judgment Act provides no relief unless there is a justiciable controversy

between the parties.  *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1179 (5th Cir. 1984).  Because

Nolasco's substantive claims cannot proceed, declaratory relief should also be denied.  Accordingly,

Nolasco's declaratory relief claim is DISMISSED.

### III. CONCLUSION

    After consideration of the motion, response, reply, and applicable law, defendants' motion

to dismiss (Dkt. 2) Nolasco's first amended complaint is GRANTED.  Nolasco also requests leave

to amend her first amended complaint if "additional clarification of [her] claims is required."  Dkt.

6 at 7.  Ordinarily, Rule 15(a)(2) commands that the court should freely give leave to amend, but it

may refuse to do so if it is "clear that the defects are incurable."  *See Great Plains Trust Co. v.*

*Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).  Here, Nolasco does not

present the court with the manner in which a second amended complaint would permit her claims

to survive nor a proposed amendment.  *U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336

---

[7] Plaintiff's live complaint pleads a claim for relief under the Texas Declaratory Judgment Act ("TDJA").  Dkt. 1, Ex. B at 16–17, ¶ 43.  However, because declaratory relief is a procedural vehicle, the TDJA does not apply in federal court; rather, the plaintiff's declaratory relief claim was converted after removal to a claim under the federal Declaratory Judgment Act.  *See, e.g., Redwood Resort Props., LLC v. Holmes Co.*, 2007 WL 1266060, at *4 (N.D. Tex. Apr. 30, 2007) (Fitzwater, J.) ("When a declaratory judgment action filed in state court is removed to federal court, that action is in effect converted into one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.").

F.3d 375, 387 (5th Cir.2003) ("A bare request in an opposition to a motion to dismiss [,] without any indication of the particular grounds on which the amendment is sought[,] ... does not constitute a motion within the contemplation of Rule 15(a)." (quotation and internal punctuation omitted)). Additionally, her claims fail as a matter of law, not due to a lack of specificity or clarity.  Therefore, the defects are incurable, and Nolasco's claims are DISMISSED WITH PREJUDICE.[8]  The court will enter a separate final judgment consistent with this opinion.

     It is so ORDERED.

     Signed at Houston, Texas on August 23, 2012.

                       Gray H. Miller
                United States District Judge

---

[8] The court's holding that Nolasco's claims fail as a matter of law applies equally to all defendants, including Ameriventure, which remains unserved.  Because the unserved defendant here is similarly situated to the moving defendants, the court may also dismiss Nolasco's claims against Ameriventure. *See Ducksworth v. City of Laurel*, No. 2:10-cv-177-KS-MTP, 2012 WL 1345356, at *2 n.7 (S.D. Miss. Apr. 5, 2012) (collecting cases).